

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Department of Argiculture
Austin, Texas

Attention:  Mr. O. C. Haworth, Associate Chief
Horticultural Inspections & Quarantines

Dear Sir:

Opinion No. O-5668
Re: Labelling of sulphur
mixtures containing sulphur
and special mixes under
the Texas Insecticide and
Fungicide Law.

You have requested the opinion of this department on certain disputed points in the new Texas Insecticide and Fungicide Law. We quote from your letter:

"(a) Sulphur. . .

"

"(1)  Sulphur manufacturers are accustomed in allowing for a variation in the degree of fineness of the sulphur in their guarantees on ground sulphur, e. g. they guarantee 93-95% through a 325 mesh sieve instead of 93% or 95% as the case might be. They claim that this method of expression does not conflict with the requirements in the law and feel that they should be allowed to continue its use as everyone interested in sulphur is familiar with it.

"(2)  Texas sulphur runs from 99.5% to 99.8% pure sulphur and the manufacturers have gean guaranteeing the purity only. They object to stating the presence of any inert material, claiming, first, that while the other ingredients present may vary in kind, they rarely, if ever are inert or inactive and second, they seem to feel that to state the presence of inert material would give the impression that something had been added, while

as a matter of fact the sulphur is as pure as it is possible to have it.

"(3) As a general rule sulphur manufacturers have not been giving the degree of fineness of the sulphur used in mixtures and some of them object to giving it now, claiming that it is impossible to determine the fineness after the sulphur is mixed with other ingredients. This is true but it is also true that the fineness can be checked at the mixture.

"(b) Mixing

"In the Lower Rio Grande Valley, especially a great many growers want special mixes, which would necessitate the registering of a great many brands by each manufacturer if he wished to supply them, however, with the exception of one firm, the dealers and manufacturers have been selling the ingredients to the customer and allowing him to use the company or firm mixer, or in some cases, the dealer has mixed it for the customer, either free or for a fee.

"Are the above procedures permissible?"

The law referred to is Senate Bill No. 5, Chapter 98, Acts 48th Legislature, Regular Session (now codified as Vernon's Annotated Civil Statutes, Article 135b-1), Section 5 of which provides:

"All corporations, firms, or persons, before selling or offering for sale any agricultural insecticide or fungicide for use within this state, shall brand or attach to each package a plainly printed statement, showing the brand or name of said insecticide or fungicide; the new weight, or volume if liquid, of the contents of the package; the name and address of the corporation, firm, or person registering said insecticide and the minimum percentage guaranteed to be present, of total arsenic, and the Maximum percentage of watersoluble arsenic if such are present, and the names and percentage

amounts of each inert ingredient; of, in place
of the names and percentage amounts of each
inert ingredient, the names and percentage
amounts of each and every ingredient having
insecticidal or fungicidal properties, and
the total percentage of inert ingredients.
All branding or labeling must be durable and
legible, and so placed and arranged as to be
easily read.

"If any form of mineral oil is a component
part, or the whole of an agricultural insecticide
or fungicide intended to be used on vegetation,
the label shall further show the minimum guaranteed
percentage by weight or by volume of the amount of
mineral oil present, the minimum guaranteed unsulphon-
ated residue of said oil expressed in percentage of
said oil.

"The label on sulphur and mixtures contain-
ing same shall further show the percentage of sul-
phur present.  In the case of ground sulphur the
minimum guaranteed degree of fineness of the sulphur,
according to methods generally recognized by the
sulphur industry, also shall be shown." (Emphasis
ours)

In answer to your question (a) (1), it is our
opinion that if the minimum guaranteed degree of fineness
of the ground sulphur used is 93% through a 325 mesh sieve,
then the label should so state, and not "93-95%," since,
although the sulphur may be in fact 95% fine, that would
not be the minimum guaranteed fineness.

Questions (a) (2) and (a) (3) are questions
as to the wisdom of the law, rather than its intent.

It is our opinion that the law requires that the
label on sulphur and sulphur mixtures sold or offered for
sale as agricultural insecticides or fungicides for use
within this State shall show the percentage of inert
ingredients, in accordance with the plain language of
Section 5, quoted above.

Your question (a) (3) gives rise to a con-
sideration of whether the requirement that the minimum
guaranteed degree of fineness of ground sulphur be

stated on the label is intended to apply to mixtures containing ground sulphur, as well as t ose agricultural insecticides or fungicides wholly composed of ground sulphur.  The position of this requirement in the statute indicates to us that it is so intended.  Furthermore, it would seem to be a foolish thing to require a seller to st te n the label the minimum guaranteed degree of fineness of an agricultural insecticide or fungicide wholly composed of gro nd sulphur, and yet permit him to av id such requirement by mixing the gound sulphur with a small percentage of inert material. "The Legislature is not to be credited with doin or intending a foolish, useless, or vain thing." 39 Texas Jurisprudence 223, "Statutes"

It is therefore our opinion that the requirement in said Section 5 that, in the case of ground sulphur, the minimum guaranteed degree of fineness of the sulphur shall be shown on the label, applies to mixtures containing ground sulphur.

Your question (b( raises two questions: one, as to the right of a grower to mix an insecticide or fungicide for his own use without a compliance with the statute as to registration and labelling; the other, as to the right of a manufacturer to mix the desired ingredients for the grower and for the grower's own use, when such ingredients are owned by the grower, without complying with the act as to labelling and registration.  The act does not prohibit either.  It is only when the mixture is sold or offered for sale as an agricultural insecticide or fungicide that registration and labelling are required.

It is therefore our opinion that neither a mixture made by a grower, or any other person, of his own ingredients for his own use es an agricultural insecticide or fungicide, nor such a mixture made by a manufacturer, of the user's own ingredients and for his own use, is required to be registered and labelled under the provisions of this law.  Of course, however, in such case the sale of the ingredients themselves, for such use is subject to the provisions of the act.

Yours very truly

APPROVED OCT 26, 1943
s/ Grover Sellers
First Assistant Attorney
General

ATTORNEY GENERAL OF TEXAS

WRA:db

By    (s) W. R. Allen
        Assistant

APPROVED OPINION COMMITTEE
BY B:B CHAIRMAN